AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Louisiana

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 23-mj- 29 |
| a light purple Apple iPhone, IMEI 356844113808191 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the _____ Middle _____ District of _____ Louisiana _____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113 | Bank Robbery and Incidental Crimes |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA ALVARO ALVAREZ
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means)*.

Date: March 29, 2023

_____
*Judge's signature*

City and state: Baton Rouge, Louisiana

Scott D. Johnson, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Alvaro Alvarez, a Special Agent with the Federal Bureau of Investigation (hereafter

FBI), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property— an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment A.

2.      Affiant has been employed as a Special Agent of the Federal Bureau of

Investigation since July 2022. While assigned to the FBI, Affiant has investigated and assisted

with investigating federal criminal violations related to violent incident crimes, gang

investigations, narcotics investigations, violent gangs, and drug trafficking organizations.

Moreover, Affiant is a federal law enforcement officer who is engaged in enforcing the criminal

laws. This affidavit is intended to show only that there is sufficient probable cause for the

requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

3.      The property to be searched is the following: one (1) light purple SE iPhone

Cellular Telephone IMEI number 356844113808191, (hereafter referred to as the **DEVICE**).

The **DEVICE** is currently located at the Baton Rouge Resident Agency of the FBI, 18134 E

Petroleum Drive, Baton Rouge, Louisiana, 70817. The **DEVICE** was seized by the Baton Rouge

Police Department pursuant to the arrest of Floyd Hose and a subsequent search of his person on

December 6, 2022.

    4.      The applied-for warrant would authorize the forensic examination of the device

for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

    5.      The FBI has been investigating the activities of Floyd Hose, who was arrested on

December 6, 2022 by the Baton Rouge Police Department ("BRPD") on one count of Louisiana

State Revised Statute 14:64.1-First Degree Robbery.

    6.      On December 5, 2022 at approximately 2:44 p.m., the Cottonport Bank, located at

6500 Corporate Boulevard, Baton Rouge, Louisiana, reported a robbery. BRPD responded and

contacted the victim (a bank teller).

    7.      The victim informed BRPD detectives that he was working the bank counter

alone when a black male subject entered the bank and approached his workstation. The subject

produced a note from his wallet and passed it to the victim. The victim stated the note had a

message that generally stated, "Give me the money and don't say anything." The suspect also

verbally told the victim, "Don't say anything or do anything stupid or you will get hurt." The

victim never saw the suspect produce a weapon. However, the victim believed the suspect was

armed by the way the suspect pushed his hip toward the victim when the suspect was talking to

him. The victim added that he feared for his life and was afraid that suspect would pull out a

weapon if he didn't comply.

    8.      The victim then retrieved a bait pack of cash and passed it to the suspect.

However, the suspect subsequently denied it. The suspect then instructed the victim to just give

him the 20's and 10's he had. The victim complied and gave the suspect a mix of 20's, 10's, and 5's, totaling to $9,605.00. The suspect abruptly left after receiving the money.

9.      The victim described the suspect as a black male, 30-40 years of age, 5'6"-5'10", weighing between 155-170 pounds, with a dark complexion and wearing a white shirt.

10.     BRPD Detectives obtained access to video surveillance footage from Cottonport Bank, and from the business located at 6300 Corporate Boulevard. The Bank surveillance footage depicted the version of events as described by the victim. The surveillance footage from the bank showed the suspect wearing a black Saints snapback cap, white Covid-19 mask, blue jeans and a white button up shirt. The 6300 Corporate Blvd footage showed the suspect's vehicle, a tan 2006 Chevrolet Impala, arrive in the area minutes prior to the time of the robbery and then showed the vehicle leave the area after the time of the robbery.

11.     License plate reader (LPR) scans showed the suspect's vehicle driving with a switched Louisiana License Plate bearing XPD738 traveling through Donmoor Avenue at approximately 1:41 p.m. on December 5, 2022, which was before the robbery. The second LPR photograph was taken at 3:13 p.m. on December 5, 2022, on Renoir Drive at Lobdell Avenue which was after the robbery.  It is important to note that Donmoor Avenue and Renoir Drive are within the same neighborhood (Mall City) where Hose lives. Based on my training and experience, LPRs can identify vehicles, their location, and their time of travel through that location. Therefore, the aforementioned LPR scans show that the suspect's vehicle left Mall City prior to the robbery and returned after the robbery.

12.     On December 6, 2022, BRPD uniform officers were asked by BRPD Detectives to patrol the mall city area (where Harry Drive and N Donmoor Avenue streets are located) for the suspect's vehicle. Officers located the vehicle bearing VIN 2G1WC581X69180249 at 6869

Rembrandt Avenue. When an officer initially approached the vehicle to retrieve the vehicle's VIN, a black male subject approached the vehicle and opened the front door with a key. The Officer used the guise of investigating a 911 hang up to contact the subject. The subject refused to give up his name but did provide the officer with his apartment number of 111.

13.     BRPD detectives ran the VIN and discovered the vehicle was involved in a traffic stop involving Hose. BRPD officers were able to obtain a picture of Hose from his Louisiana Identification Card and confirmed with the officer who discovered his vehicle that Hose was the subject who told him he lived at apartment 111.

14.     BRPD detectives obtained warrants through the 19th Judicial District Court for Hose's arrest, for his phone records, a search of his residence, and a search of his vehicle. Hose was arrested by BRPD detectives as he was walking outside his apartment. His **DEVICE** was recovered from his person during his arrest. A search of Hose's apartment produced a mask suspected to be worn by Hose during the robbery and a portion of the money (275 Twenty Dollar bills and 69 Five Dollar Bills) suspected to be taken from the bank during the robbery.

15.     After Hose's arrest, he was interviewed at BRPD. After being advised of the identities of the interviewers, Special Agent David Borgetti and BRPD Detective Justin Becnel, Hose was read his advice of rights. Hose subsequently signed the advice of rights form and agreed to speak with Special Agent Borgetti and Detective Becnel.

16.     Hose provided Detective Becnel and Special Agent Borgetti with his phone number, 225-461-3626, his passcode, 141471, and informed them that he has had the phone for six months. Hose initially denied robbing any banks. However, after being shown photographic evidence that linked him to the robbery, Hose confessed to the robbery.

17.     Specifically, Hose reported he committed the robbery to help pay off several

debts he had, which included a $1,200 debt he owed to his bail bonding company for a November 2022 narcotics arrest. Hose told the interviewers he was not armed when he entered the bank. Hose was apologetic for what he did and indicated he did not have any intent to harm anyone during the robbery.

18.     Based on my training and experience, as well as the training and experience of other agents and TFOs, I am aware that cellular telephones are often used by bank robbers to plan routes, coordinate with co-conspirators, take surveillance photos/videos, and conduct internet research on targets. Communication using these devices can consist of telephone calls, text messages, calls and messages within cellular applications (apps), and other means. Additionally, the contact lists and phone numbers of co-conspirators are often stored in the cellular telephones with WiFi or telephonic capabilities.

19.     BRPD obtained cell site records, call records, SMS records, and data usage records pursuant to a state search warrant. With the use of open sources, your affiant was able to use these records to identify the location of the grid coordinates for the cell towers used by the phone before, during, and after the time of the robbery. From approximately 2:22 pm to 2:54 pm on December 5, 2022, the day of the robbery, records for voice, data, and SMS usage showed Hose's phone was using cell towers within 160 to 800 meters of the robbery location. Voice usage records indicate Hose made outgoing phone calls minutes before and after the robbery. Thus, the phone was active at or near the location of the robbery during the same hour that the robbery took place.  Additionally, on the same day the robbery occurred, from 10:16 am to 10:18 am, phone location records show that Hose's phone was using cell towers within 50 to 130 meters from the robbery location.

**TECHNICAL TERMS**

20.     For the purposes of this affidavit, I use the following technical terms to convey the following meanings:

a.  Cellular telephone:  A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, cellular telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved

in such navigation.  The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite

contains an extremely accurate clock.  Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers.  These signals are sent by radio, using specifications that

are publicly available.  A GPS antenna on Earth can receive those signals.  When

a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and

sometimes altitude with a high level of precision.  This information is often more

precise than cell site data obtained from phone companies.

c.  IP Address: An Internet Protocol address (or simply "IP address") is a unique

numeric address used by computers on the Internet.  An IP address is a series of

four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

Every computer attached to the Internet computer must be assigned an IP address

so that Internet traffic sent from and directed to that computer may be directed

properly from its source to its destination.  Most Internet service providers control

a range of IP addresses.  Some computers have static—that is, long-term—IP

addresses, while other computers have dynamic—that is, frequently changed—IP

addresses.

d.  Internet: The Internet is a global network of computers and other electronic

devices that communicate with each other.  Due to the structure of the Internet,

connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

21.    Based on my training, experience, and research, I know the **DEVICE** has capabilities that allow it to serve as wireless telephone, digital camera, and GPS navigation device.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on these devices.  This information can sometimes be recovered with forensic tools.

23.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

  a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25.     *Manner of execution.*  Because this warrant seeks only permission to examine the **DEVICE** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is probable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **DEVICE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Alvaro Alvarez
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email/pdf. and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the _29th_ day of March, 2023.

SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

## ATTACHMENT A

The property to be searched is the following: *one* (1) light purple SE iPhone Cellular Telephone IMEI number 356844113808191, (hereafter referred to as the **DEVICE**). The **DEVICE** is currently located at the Baton Rouge Resident Agency of the FBI, 18134 E Petroleum Drive, Baton Rouge, Louisiana, 70817. This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      The following records on the device described in Attachment A: location information, to include GPS coordinates, IP address information, and addresses entered or data stored in any map applications between 12/04/2022 and 12/06/2022.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as user profiles, saved usernames, and the contact card assigned to the user of the phone.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.  23-mj-29 |
| a light purple Apple IPhone, IMEI 356844113808191 | ) |
| | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   April 11, 2023,_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Scott D. Johnson_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    March 29, 2023, at 10:32 a.m.         _____
                                                                                                             *Judge's signature*

City and state:        Baton Rouge, Louisiana         Scott D. Johnson, U.S. Magistrate Judge
                                                                                             *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>23-mj-29 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

### Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

The property to be searched is the following: *one* (1) light purple SE iPhone Cellular Telephone IMEI number 356844113808191, (hereafter referred to as the **DEVICE**). The **DEVICE** is currently located at the Baton Rouge Resident Agency of the FBI, 18134 E Petroleum Drive, Baton Rouge, Louisiana, 70817. This warrant authorizes the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      The following records on the device described in Attachment A: location information, to include GPS coordinates, IP address information, and addresses entered or data stored in any map applications between 12/04/2022 and 12/06/2022.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as user profiles, saved usernames, and the contact card assigned to the user of the phone.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.